## No. 13,027.

J. A. FAY & EGAN CO., VS. OUACHITA EXCELSIOR SAW AND PLANING MILL, LIMITED.

HIRSCH & GATHRIGHT, GARNISHEES.

L. D. McLAIN, INTERVENOR.

### SYLLABUS.

1. While the interest of a partner in an existing partnership may not be seizeu under garnishment proceedings, the interest *as creditor* of one in a contract of letting and hiring, as herein explained, may be so seized, and the ultimate indebtedness ascertained by adjustment of accounts and settlement of rights under the contract.
2. Contract in this instance interpreted, its true meaning pointed out and certain credits claimed by garnishees rejected.

APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

---

*A. A. Gunby* for the Plaintiff and Appellant.

---

*Stubbs & Russell* for the Garnishees, Appellants.

---

*Boalner & Dodds* for the Intervenor, Appellant.

---

Argued and submitted January 30, 1899.
Opinion handed down June 19, 1899.
Decree amended, and rehearing refused June 30th, 1899.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff company, judgment creditors of defendant company, caused execution to issue and cited Hirsch & Gathright as garnishees, who returned negative replies to the interrogations propounded touching indebtedness to defendant, or possession of property belonging to defendant.

A rule by plaintiff to traverse was filed and from a judgment thereon rejecting the demand to hold the garnishees liable, plaintiff appealed. This appeal was before us in February, 1898, and on March 7, 1898, an opinion and decree was handed down, reversing the judgment of the court a qua and remanding the case to be proceeded with according to the views therein expressed. See 50 La. Ann. 206.

The purpose of the remanding was to ascertain the indebtedness, if any, of the garnishees to defendant on a final settlement of accounts between the parties under the contract of April 17, 1897, set forth in abbreviated form in our former opinion.

On the return of the case to the trial court, plaintiff moved for the appointment of auditors and experts to examine into the accounts and make report thereon.

This was on April 12, 1898. The contract expired by limitation on April 17, 1898, but owing to unfinished business on hand it was practically extended until May 21, 1898.

The court granted the motion and appointed two parties as experts and auditors, defined their powers and instructed them as to the examination they were to make, with orders to report their findings of facts and figures by the 2nd of May. It was not, however, until June 23, 1898, that they filed a report which was stated to be a partial one owing to lack of time, etc. On the 10th of September following, they filed a second report more in detail. According to this report the indebtedness of the garnishees to defendant on May 21, 1898, was $738.66, which was about fifty dollars less than the indebtedness which the garnishees themselves admitted in an account presented by them about the same time.

Plaintiffs filed oppositions to both reports and to the statements of account presented by the garnishees.

They pointed out and specifically opposed certain items appearing upon the reports, which, if disallowed, would materially increase the indebtedness of the garnishees to their debtor.

Some two months after the appointment of the experts, and a day

or two before they made their first report, a petition of intervention was filed by L. D. McLain, in which he alleged he had become the purchaser, on the 11th of June, 1898, at sheriff's sale, of all the right, title and interest of defendant company *in the contract of partnership* which had existed between defendant and Hirsch & Gathright.

The contract intervenor had reference to was the one of April 17, 1897, upon which were predicated the garnishment proceedings taken out by plaintiff against the said Hirsch & Gathright, and under which this court had held, on the first appeal, that a seizure had been effected.

As to this seizure and the proceedings relating thereto, intervenor averred the same to be void for the reason that the interest of a partner in a partnership cannot be seized by garnishment, and that plaintiff (the Fay and Egan Co.) had acquired no right whatever as seizing creditors.

He, thereupon, declaring that while the interest of defendant as partner in the contract with Hirsch & Gathright could not be seized as plaintiff company had attempted to do, such interest could be seized in the way he (intervenor) had seized it—that is to say, by the sheriff, under *fi. fa.*, by giving notice to the judgment debtor and to Hirsch & Gathright that the interest of the former as partner of the latter firm in the contract of April 17, 1897, had been seized—and that being the owner of such interest by purchase at public sale after due advertisement, he was entitled to a liquidation of the partnership and to receive whatever sum may be found due to defendant company on such liquidation.

He prayed to be recognized as the owner of the rights of defendant under "the aforesaid contract of partnership," for the liquidation of the alleged partnership and for judgment against Hirsch & Gathright for whatever sum may be found to be due defendant as partner.

Plaintiff objected to this intervention on the ground that it came too late, being filed on the day the case was fixed for trial, and excepted to it on the ground that it disclosed no cause of action.

The judge sustained this contention of plaintiff and dismissed the intervention. Subsequently, however, he reconsidered his ruling, permitted the intervention to stand and continued the case until the September term of the court, with further instructions to the experts.

The claim of the intervenor as above set forth had its origin, development and consummation as follows: In December, 1897, Green B.

Haynes recovered a judgment against the Ouachita Saw and Planing Mills, Limited, (defendant herein) for $5810.32, with interest and attorney's fees. On May 21, 1898, a writ of *fieri facias* issued on this judgment, and on May 23rd the sheriff, under this writ, seized the defendant's interest in the alleged partnership between the mill and Hirsch & Gathright. The *same day* the seizure was effected, the Haynes judgment, under which made, was transferred to L. D. Mc-Lain, intervenor herein.

This was, as we have seen, long after the decision of this court holding that plaintiff company had seized under the garnishment proceedings against Hirsch & Gathright whatever indebtedness the latter would owe the Mill, under the contract of April 17, 1897, upon a settlement of accounts.

It was, too, long after the appointment of experts had been made and other steps taken, in carrying out the decree of this court, looking to a settlement of accounts and the ascertainment of the amount of indebtedness due to the Mill.

Following his seizure of the interest of the Mill *as partner* in the contract with Hirsch & Gathright, the sheriff advertised same for sale and on June 11, 1898, offered it at public sale—McLain becoming the purchaser for the sum of $666.70, which was two-thirds of the appraised value thereof.

There was judgment in the trial court rejecting the demand of the intervenor in so far as it tended to affect the rights of plaintiffs acquired under their garnishment proceedings against Hirsch & Gathright, but directing that should any surplus remain over in the hands of the garnishees after satisfying plaintiff's judgment and other prior seizures, the same was to be paid over to the intervenor.

The District Judge, further, decreed an indebtedness against Hirsch & Gathright in favor of the Ouachita Excelsior Saw & Planing Mill, Limited, for the sum of $1625.82 with interest, and adjudged that this indebtedness had been seized by plaintiffs under the garnishment proceedings taken out by them against Hirsch & Gathright.

Judgment for the amount was entered up in plaintiffs' favor against the garnishees, less the costs of the garnishment proceedings, including the compensation allowed the experts—with the stipulation, however, that the garnishees be allowed to retain in their hands a sufficient sum to cover the prior seizures of the same indebtedness under proceedings in garnishment which had issued on judgments recovered

against the common debtor by E. P. Allis & Co. and John E. Dunn, should the seizures of those creditors be maintained and held to prime that of plaintiffs.

Another creditor, Filer, Stowell & Co., who likewise had a judgment against the common debtor, under which, it seems, the same indebtedness had been garnisheed in the hands of Hirsch & Gathright, is mentioned *in the opinion* of the lower court as standing on the same basis with Allis & Co. and Dunn, but *in the judgment* as copied in the record no mention is made of them.

It appears that these creditors—Allis & Co., Filer, Stowell & Co. and Dunn—had recovered judgments for amounts under the jurisdiction of this court and had garnisheed M. Hirsch and J. P. Gathright individually, not as the firm of Hirsch & Gathright, a short time prior to the service upon that firm of citation in garnishment by plaintiffs.

In their cases, as in that of plaintiff, the District Court rejected the demand against the garnishees, and they (the creditors) appealed to the Honorable Court of Appeals at or about the same time plaintiffs took their former appeal here. On the trial in the Court of Appeals that tribunal took the cases under advisement to await the action of this court on the appeal which had been taken by the Fay & Egan Company, and following the determination of the case here the Judges of the Court of Appeals made the same disposition of the cases before them as was made by this court in the case pending here. They reversed the judgments of the lower court and remanded the causes to be proceeded with in accordance with the views expressed by this court in its opinion handed down herein on the former appeal.

From the judgment of the District Court in the pending controversy, plaintiffs, the garnishees and the intervenor have all appealed.

The intervenor's pretensions cannot be sustained. Waiving the question of the lateness at which he appeared in the case, and other questions of serious import affecting the claim he sets up, raised by plaintiffs' counsel in argument and brief, we have the judgment of this court, deliberately rendered, decreeing that the Ouachita Saw and Planing Mills, Limited, had a seizable interest in the contract of date April 17, 1897, entered into by and between Hirsch & Gathright and the said Mills, and that the said interest was seized by plaintiffs in the hands of Hirsch & Gathright.

Having reached this conclusion, the case was remanded for the-

adjustment of accounts and ascertainment of the extent ·of the indebtedness, if any, which would be due the Mills by the garnishees, which indebtedness was the interest in the contract seized.

While the lower court is proceeding with the work of this adjustment and ascertainment, intervenor, himself a director in the Ouachita Excelsior Saw and Planing Mills and President of the West Monroe Lumber Co., successors of the Saw and Planing Mills, steps in, buys· with stock of the West Monroe Lumber Co., a judgment against the· Saw and Planing Mills, asserts a seizure under it of the interest *as partner* of the Mills in the Hirsch & Gathright contract, bids the· supposed interest in at sheriff's sale, and then, assuming to stand not only in the shoes of defendant company (the Saw and Planing Mills) but to have even greater rights, appears in the controversy, asking, practically,· for the annullment of the former judgment of this court· and of three judgments in the Court of Appeals, and that he be allowed to take everything in sight adjudged to be due defendant under the Hirsch & Gathright contract.

We find ourselves unable to concur in the view, which, from the standpoint of the intervenor, makes this a proper, a legal, a *reasonable* thing to do—all three.

We might well agree with his counsel that the interest of a partner in a partnership cannot be seized by garnishment process against the· co-partner, but differ from them in the view that makes the relation which existed between the defendant corporation and the garnishees under the contract of April 17, 1897, *a partnership.* We did not regard it as such in the consideration given to this case on the former· appeal, and do not so regard it now.

Since it has now become advisable to pass directly on the character· of that contract we will say we look upon it as one of letting and· hiring, of employment of the Mill by Hirsch & Gathright to saw *their·* logs into lumber and dry and load the lumber in cars for transportation to market.

The logs were the exclusive property of Hirsch & Gathright; the lumber manufactured out of the same was their exclusive property; it was to be shipped to market in their name and for their account; and its sale and disposition was exclusively in their hands.

The mill and the people owning and running it were simply hired· by them to saw up the logs, dry the lumber and load the same into· cars. The compensation to be paid the mill, how arrived at, and how·

108

to be realized, does not serve to take the contract out of the category of letting and hiring and make it one of partnership.

This Saw and Planing Mill, a limited corporation, could not form a co-partnership with the commercial firm of Hirsch & Gathright, but the latter could hire the mill, its outfit and force of hands, to saw their logs into lumber and dry and load the same on the cars, for which it was to be paid $3.50 per M feet, lumber measure, and, in addition, to have what the lumber brought, if anything, in market over and above $6.50 per M feet.

The Mill people were willing to wait for their compensation of $3.50 per M feet until the lumber was sold and to even agree that the first claim on the proceeds of the lumber was to be $3.00 per M feet, representing the value of the timber, and to be retained by the owners of the timber. This is to be regarded simply as a precaution against loss by those who owned the logs if the contingency the state of the lumber market did not permit of the sale of the lumber for enough to realize $3.00 per M feet as the value of the timber from which the lumber was sawed and also $3.50 to the Mill for sawing, drying and loading. The Mill wanted employment and secured it, taking its chances, nothing more, on the lumber market being such that the lumber would sell for as much as $6.50 per M feet—thus enabling it to realize $3.50 per M feet for its work. If the lumber realized less than $6.50 per M, the result would have been, merely, that the Mill would have received less than $3.50 per M. The owners of the timber were to have its value first, $3.00 per M; the Mill got what the lumber sold for over this price up to $6.50 per M. If it sold for $6.50, it received $3.50 per M; if for less, it received less for its work. If the lumber sold for more than $6.50, the Mill got the benefit of the surplus. This surplus, if any, is to be regarded as additional compensation earned by it, and permitted to be paid it by the state of the lumber market, for sawing the logs, drying the lumber and loading same into the cars.

The mill got the benefit of the excess of the sale of lumber over and above $6.50 per M in this way: Twenty-five per cent of this excess or surplus was to be retained by Hirsch & Gathright on an old debt the Mill owed them; the remaining seventy-five per cent was to be paid in cash to it.

Thus were Hirsch & Gathright finding a sale for their logs at $3.00

per thousand, and, in addition, providing a probable means of payment of the anterior indebtedness the Mill owed them.

And thus was the Mill enabled to find employment for sawing, drying and loading lumber at the remunerative rate of $3.50 per M, with the likelihood of greater compensation by reason of the lumber selling in excess of $6.50 per M, and by the use of part of this excess securing the settlement of the old debt it owed Hirsch & Gathright.

This arrangement, entirely legitimate and proper, did not make the contracting parties *partners* in the legal sense of that term. There was no liability on part of Hirsch & Gathright for the indebtedness of the Mill; there was no liability on part of the Mill for the indebtedness of Hirsch & Gathright as dealers in lumber. Nor, as we read the contract, was there any stipulation for a division of any profits. Whatever each of the contracting parties was to receive under the arrangement cannot be classed as division of profits.

The evident object of Hirsch & Gathright in entering into the arrangement was to put themselves in a position to realize $3.00 per M for their logs—a fixed price—together with the hope of realizing, through part of the contingent compensation to be received by the Mill for its work, payment of the outstanding claim against the Mill, which, it would seem, they were not likely to collect otherwise.

They found that in order to make their timber realize to them $3.00 per M, they were under the necessity of having the logs sawed into lumber, the ownership of which they retained until it (the lumber) was sold, and they wisely reserved to themselves the exclusive control of its sale and disposition.

That no "partnership" arrangement was contemplated, is conclusively shown by clause 5 of the contract reading as follows:

"5. It is further distinctly understood and agreed that the parties of the first part do not, by the delivery aforesaid, sell, part with, or transfer to the party of the second part, any property interest in any of the saw logs which may be delivered in accordance with the terms of this contract, nor shall the party of the second part become the owner of the lumber manufactured therefrom, their interest in the same being confined to the amount herein above stipulated as compensation for the manufacture of said logs into lumber, and drying and delivering the same on the cars for shipment."

Whatever there is in the testimony of the witness Kuhn, tending to make out of this arrangement between the Mill and Hirsch & Gath-

1716     SUPREME COURT OF LOUISIANA.

Fay & Egan Co. vs. Ouachita Excelsior Saw and Planing Mill. Ltd., et als.

right anything beyond what the plain recitals of the contract purport and warrant is disregarded under the well known rule of evidence that parol testimony is inadmissible to explain, control, vary or contradict a written instrument. Seasonable objection was made to such evidence and bill reserved.

It follows that the intervenor did not seize anything belonging to defendant Mill under attempted execution of the judgment he had acquired from Green B. Haynes, and that he had no actual interest to subserve or protect by appearing as party litigant in the controversy. His demand must, therefore, be rejected outright.

This brings us to the consideration of the report of the experts and the judgment of the court a qua thereon.

It is not necessary to go into a minute examination and analysis of the accounts between the garnishees and the debtor of plaintiffs. The only interest plaintiffs have in the controversy is to show indebtedness enough to cover the judgments under which seizure was effected prior to their seizure, and the balance due on their judgment. Many items claimed as credits by the garnishees might be found, on critical examination, not to be such charges, as under the contract, they were entitled to make as against the seizing creditors.

It suffices to consider some of the larger charges only, objected to as not within the scope of the contract.

The judgment appealed from decrees against the garnishees $1625.32.

The court arrived at this sum by taking as a basis what the accounts rendered to the court by the experts and garnishees showed to be due the Saw and Planing Mill. It then rejected certain items claimed as credits by the garnishees and added their aggregate sum to the amount the statement of account showed to be due. Then, allowing the garnishees to retain one-fourth of this on the old indebtedness of the Mill to them as per the terms of the contract, it decreed the other three-fourths, or $1625.82, due to the Mill by the garnishees under the contract.

We will accept this as correct as far as it goes. But other items on the account claimed as credits must, under the view we take of the case, be disallowed for the purpose of this suit.

By reference to clause 6 of the contract we find that account sales of the lumber were to be rendered by Hirsch & Gathright to the Mill on the 10th of each month, and that the amount due to the Mill

as compensation for the manufacture and shipment of the lumber so sold should be paid over by Hirsch & Gathright on demand to the Mill, *less the amount of advances Hirsch & Gathright may have made to the Mill to pay the expenses incurred in the manufacture of the lumber.*

Observe the words "expenses incurred *in the manufacture* of the lumber." (Italics ours.)

It is clear the expenses thus contemplated were the ordinary operating expenses of the Mill, and that such was the intention of the parties at the time. This did not include payment of insurance on the mill and its outfit, for which a credit of $1139.96 is claimed; nor the payment of Building Association dues for loans, etc., made the Mill, and for which a credit of $2427.77 is claimed; nor amount $85.00 figuring on the account as paid C. C. Maddin, for which credit is claimed; nor that of $101.30 paid sundries, nor that of $112.50 paid J. Chester, for all of which credit is claimed; nor various other items of credit claimed and allowed by the District Judge, not necessary here to include in the calculation.

The above aggregate $3866.53. Allowing the garnishees to retain one-fourth of this sum, as per the contract, on the prior indebtedness due them, there remain $2899.90, which added to the $1625.82 allowed by the trial court gives $4525.72 as the sum to which the judgment appealed from must be increased.

For the reasons assigned, it is ordered, adjudged and decreed that the demand of the intervenor, L. D. McLain, be rejected at his costs.

It is further ordered, etc., that the garnishees, Hirsch & Gathright, and the individual members of that firm, are adjudged to owe and be indebted unto the Ouachita Excelsior Saw and Planing Mill, Limited, in the sum of four thousand, five hundred and twenty-five and 72-100 dollars, with legal interest thereon from May 21, 1898, and it is further adjudged that said indebtedness has been seized by the plaintiffs, J. A. Fay and Egan Company, under their judgment herein against the said Ouachita Excelsior Saw and Planing Mill, Limited, and the said firm of Hirsch & Gathright and the members thereof *in solido* are hereby decreed to pay to said plaintiffs the amount remaining due on their said judgment against the said mill, not exceeding said sum of $4,525.72—first deducting and paying out of said sum the costs of this garnishment proceeding in both courts, including

the fees of the experts, H. B. Newhall and J. J. Jordan, remaining due, and retaining in their hands a sum sufficient to cover prior legal seizures of the said fund under garnishment proceedings on writs of *fieri facias* issued on judgments obtained by other creditors of the said Mill.

It is further ordered, &c., that the judgment appealed from, as thus amended, be affirmed.

## ON APPLICATION FOR REHEARING.

The decree heretofore handed down is amended by adding thereto the following: The decree herein being limited, in asserting indebtedness on part of the garnishees to defendant company, to the amount only that is necessary to pay and satisfy the balance of plaintiffs' judgment, with interest and costs, and the seizures of the same fund preceding that of plaintiff company.

Rehearing refused.

MONROE, J., takes no part.