THOMPSON, J.
 

 The issue presented on this appeal is between the plaintiff and the garnishee, both being domestic corporations domiciled in the city, of New Orleans.
 

 The defendant is a foreign corporation with its legal domicile in .the Republic of Cuba..
 

 On July 15, 1921, the plaintiff sued the Compania General' de Petróleo corporation fdr $2,250 and caused a-writ of attachihent to issue against said corporation. Gelpi & Co., Inc., was made party garnishee to whom the usual interrogatories were propounded.
 

 ■ In answer to the interrogatories, Gelpi & Co. denied any indebtedness whatever to the plaintiff’s alleged debtor, but admitted that the company had had certain financial and business dealings with the defendant during the preceding year and had furnished said defendant with a written statement of the account showing that there was no balance due the. said defendant; that the defendant had made a claim against Gelpi & Co. which was denied; and -that the validity of the claim was a matter entirely between the defendant and said garnishee.
 

 Thereafter the Compania General de. Petróleo Corporation sued Gelpi & Co. in the United States District Court for the Eastern District, for the sum of $42,389.57.
 

 It was alleged that the said indebtedness was due the petitioner under a contract by which Gelpi & Co. was employed as agent and broker of petitioner for the purpose of assisting petitioner in having refined on toll, and to sell for petitionex-’s account, a quantity of Cuban raw sugar.
 

 In answer to that suit Gelpi & Co. denied any indebtedness growing out of or resulting from the alleged transactions and reconvened for the sum of $40,000, less a credit of $30,489.57.
 

 The suit never went to trial for the reason that a compromise was effected under which Gelpi & Co. paid the plaintiff the sum of $20,-000.
 

 The plaintiff in the present suit then filed a rule on the garnishee to traverse the answers of the garnishee.
 

 On a trial of that rule the proceedings in the federal court and the compromise of that suit was introduced in evidence, and on that evidence judgment was rendered against the garnishee for the amount sued for with recognition of the lien resulting from the attachment for the payment of any judgment which may thereafter be rendered in favor of plaintiff- against the defendant.
 

 The position of the garnishee is that the plaintiff is required . to show . by positive
 
 *777
 
 proof, or by the oath of two credible witnesses, that the answers yof the garnishee were false, and that the mere proof that a demand had been made in the suit in the federal court, and the compromise of that suit in which the garnishee paid $20,000 on the demand, was not sufficient to establish the falsity of the garnishee's answers within the meaning of Code of Practice, art. 264, nor to show the existence of a debt at the date of the attachment, in view of the persistent and continued denial by the garnishee that it owed plaintiff’s debtor any sum whatever.
 

 The transaction .out of which the indebtedness originated, if there was such a debt, antedated the plaintiff’s attachment and garnishment.
 

 Therefore, if the payment under the compromise related back to the date of the attachment and had the legal effect of an, acknowledgment and recognition of a pre-existing debt, then it is quite clear, we think, that the claim became subject to plaintiff’s attachment.
 

 Our conclusion is that the payment under the compromise was a conclusive and effectual recognition that the garnishee owed the plaintiff’s debtor the amount so paid and that the acknowledgment related back to the date of the seizure.
 

 The amount so agreed on and paid was manifestly a liquidation and settlement of the matter then in controversy between the parties.
 

 The transaction and compromise was in no sense the creation of a new and distinct obligation, in a matter arising subsequent to the plaintiff’s attachment. There was no other claim in dispute between the parties. Payments of money are only made in discharge of legal and moral obligations. It is not to be presumed that the garnishee intended to make a donation to its alleged creditor. On the contrary, it may be fairly assumed that the payment was made in discharge of a legal obligation.
 

 The plaintiff was. not required tp go beyond the settlement under the compromise and to prove that the garnishee owed the debt demanded of it in the federal court. The acknowledgment and payment made by the garnishee relieved the plaintiff of that burden.
 

 It is conceded by the counsel for the garnishee that the plaintiff herein could have seized the rights and claim of the plaintiff in the suit in the federal court against the garnishee and could have obtained judgment on making due proof of the claim in that court. If that be trae as a legal proposition, and it is unquestionably true, then it must be also true that the attachment had the legal effect of arresting in the hands of the garnishee whatever amount might be ascertained to be due by the garnishee, at least to the extent of plaintiff’s claim in the attachment suit.
 

 It can hardly be denied that if judgment had been rendered in the federal court against the garnishee for any amount, that amount would have been covered by the attachment the moment that judgment became final.
 

 The voluntary adjustment and settlement by the garnishee could not and did not alter the legal situation in this respect.
 

 A quite similar issue was tendered in the suit of Marchand v. Bell, 21 La. Ann. 33, in which the city of New Orleans was garnisheed and answered that if it was ever indebted to Bell by reason of any contract between them, any amount that might have been due him was forfeited on account of his failure to fulfill his part of it. Thereafter the city filed a supplemental answer alleging that a compromise had been made with Bell under which he was to receive $5,000. Prior to plaintiff’s suit, one MacKenzie had served garnishment process on the city. It was held that MaeKenzie’s right was ascertained the moment- the city admitted its indebtedness to Bell and his seizure had priority over Bell’s.
 

 
 *779
 
 In the cited case, as in the present one, the amount of the indebtedness was not ascertained until the compromise, which was after the seizure; but when it was thus ascertained it reverted back .to the date of the seizure and was covered by the seizure.
 

 In the case of Fay & Egan v. Saw & Planing Mills, 50 La. Ann. 205, 23 So. 312, there was a seizure by garnishment of the rights of a judgment debtor under an existing contract. The contract had been in existence only two months when the garnishment was served, and it was impossible at that time to determine what interest the judgment debt- or had in the contract; but the court held that while this was true, there might be an eventual right or interest in or flowing from the contract, which was still in force, accruing or to accrue to the debtor at the time of termination thereof and then ascertainable, which may be made available under the seizure.
 

 “It was not simply what the mill was actually entitled to receive from Hirsch & Gathright at the moment of the levy under the writ that was seized, but also whatever amount should or would be due it on final adjustment and settlement of the contract affairs.”
 

 In the instant case there had been contractual relations between the plaintiff’s debtor and the garnishee which had terminated at the time of the attachment.
 

 There were disputes, claims, and counterclaims between the parties. It required a final adjustment and settlement between the parties, and the courts .were resorted to to bring about that adjustment. Finally, however, the parties took the matter into their own hands and made an adjustment by which it was agreed that the garnishee owed and should pay the sum of $20,000. This ascertained amount, as the court said in the case supra, was made available under the plaintiff’s attachment.
 

 In the second appeal of the Fay & Egan Case to this court, reported in 51 La. Ann. 1T08, 26 So. 386, it was distinctly announced that the interest as creditor of one in a contract of letting and hiring may be seized and the ultimate indebtedness ascertained by adjustment of accounts and settlement of rights under the contract applied to that seizure.
 

 That principle is equally applicable in the present case. The contract here involved was one of principal and agent or broker, and whatever amount was ascertained to be due by the agent or broker to the principal on final adjustment and settlement was affected by the attachment, and it makes no difference, so far as the legal effect of the seizure is concerned, whether the ascertainment of the amount and the adjustment and settlement of the same was judicial or conventional.
 

 We have examined the eases cited in the brief of garnishee and can find in them no material conflict with the ruling in the Marchand and Fay & Egan Cases noted herein. If there is any such conflict, we feel constrained to follow the doctrine of the last-mentioned cases.
 

 Since the transcript was filed in this court, the Douglas Public Service Corporation, Inc., has acquired by purchase all the right, title, and interest of the plaintiff in this cause of action and has on proper motion been recognized and substituted as the party plaintiff herein.
 

 For the reasons assigned, the judgment appealed from is affirmed in favor of said substituted plaintiff.